IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SHANNON DOBBS                                                                    PLAINTIFF

V.                              CASE NO. 3:16-CV-181-BD

NANCY BERRYHILL, Acting Commissioner,
Social Security Administration                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Shannon Dobbs has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income.[1] Both parties have submitted appeal briefs, and the case is ready for decision.[2]

**Background**

Ms. Dobbs alleged that she became limited in her ability to work due to paranoid schizophrenia. (SSA record at 94, 203) After conducting a hearing, the Administrative Law Judge[3] ("ALJ") concluded that Ms. Dobbs had not been under a disability within the meaning of the Social Security Act ("the Act") at any time from her alleged onset date through April 28, 2015, the date of the decision. (*Id*. at 9, 17) On June 7, 2016, the Appeals Council denied the request for a review of the ALJ's decision, making the

---

[1] Ms. Dobbs also filed a claim for Disability Insurance Benefits. (*Id*. at 98-100) That claim was voluntarily dismissed at the hearing, because Ms. Dobbs had not met the insured status requirements of the Social Security Act since September 30, 2002. (SSA record at 1, 12)

[2] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

[3] The Honorable David Knowles.

decision the final decision of the Commissioner. (*Id*. at 1-3) Ms. Dobbs then filed her complaint initiating this appeal. (Docket entry #2)

Ms. Dobbs was 35 years old at the time of the hearing and lived with her three children. (SSA record at 30) She had past work as a housekeeper, fast food worker, and daycare worker, but she had not worked since 2009. (*Id*. at 161, 211)

**The ALJ's Decision**

The ALJ found that Ms. Dobbs had not engaged in substantial gainful activity since August 19, 2013,[4] her alleged onset date. (*Id*. at 12) He further found that Ms. Dobbs had the medically determinable impairments of psychotic disorder and obesity, but he did not find that either impairment or the combination of impairments significantly limited her ability to perform basic work-related activities for 12 consecutive months so as to constitute a severe impairment. (*Id*. at 12) The ALJ found that Ms. Dobbs's impairments were not as limiting as she alleged and concluded that she had not been under a disability, as defined by the Act, from her alleged onset date through April 28, 2015, the date of his decision. (*Id*. at 12-16)

**Ms. Dobbs's Allegations**

Ms. Dobbs claims the ALJ erred by not developing her work background, not calling a vocational expert, and not presenting a hypothetical to a vocational expert. (#10

---

[4] The ALJ's opinion references an onset date of September 1, 2009; however, Ms. Dobbs amended her onset date at the hearing to August 19, 2013. (SSA record at 27)

at 5, 8)  Ms. Dobbs also contends that she has marked limitation in activities of daily living; severe limitation in the area of social functioning; marked limitation in concentration, persistence, and pace; and repeated episodes of decompensation.  (#10 at 11-14)

**Standard on Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error.  *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C. §§ 405(g).  Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Severe Impairment**

At step two of the sequential disability-determination process, the claimant must prove she has a severe impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 145 n. 5 (1987) (explaining that the Commissioner bears the burden at step five of the sequential evaluation process, but the claimant bears the burden at steps one, two, and four).  If Ms. Dobbs failed to prove a severe impairment, the process ends.  20 C.F.R. §416.920(a)(4)(ii).

Here, the ALJ found, at step two, that Ms. Dobbs did not have a severe impairment. Consequently, the ALJ was not required to proceed beyond step two to assess Ms. Dobbs's residual functional capacity or past relevant work.

At step two, the ALJ considered both of Ms. Dobbs's impairments – her obesity and mental impairment – and concluded she did not have an impairment that limited her ability to do basic work activities. To be severe, an impairment must significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. 416.920(c). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.922(b).

Ms. Dobbs did not apply for disability based on obesity. (SSA record at 94, 98) The ALJ noted that, on September 12, 2012, Ms. Dobbs's body mass index was 43.2, so he found she had the impairment of obesity. But he also observed that, at the hearing, Ms. Dobbs testified that only her mental issues, not physical, affected her ability to perform basic work activities. (*Id*. at 14, 28, 277) Given Ms. Dobbs's testimony, the ALJ did not err in finding that Ms. Dobbs's obesity was not a severe impairment.

The ALJ assessed Ms. Dobbs's mental impairment. The record contains only a few treatment records during the relevant time period for what Ms. Dobbs claimed was a

4

severe mental impairment. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failure to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision).

Pharmacy records indicate that Ms. Dobbs's primary care physician, Mary S. Shields, M.D., prescribed Benztropine, Haloperidol, and Citalopram for her. (*Id*. at 266-71)  Medical records indicate that Dr. Shields examined Ms. Dobbs on August 1, 2013, because she needed refills on her prescriptions. Ms. Dobbs reported that she was "real blah not suicidal no hallucinations." (*Id*. at 273)  Her prescriptions were renewed. (*Id*. at 273)

In April, 2011, prior to Ms. Dobbs's onset date, Ms. Dobbs was hospitalized for mental health treatment. (*Id*. at 297-98)  Treatment records indicate she had been off her mental health medications since 2010.

The Commissioner sent Ms. Dobbs for a psychological consultative examination with Vickie Brewer Caspall, Ph.D. (*Id*. at 280-85)  Ms. Dobbs reported a history of paranoid schizophrenia and of hearing voices and being paranoid. (*Id*. at 280-81)  Dr. Caspall noted, however, that there was no family history of schizophrenia. (*Id*. at 281)  Ms. Dobbs reported that she was taking Benztropine, Haloperidol, and Citalopram, which had been prescribed by her primary care physician, and that she had not followed-up with a psychiatrist following her hospitalization. (*Id*.)

Ms. Dobbs had driven herself to the appointment. (*Id.*) She reported that she had mild anxiety but denied feelings of depression. (*Id.*) She was cooperative, but Dr. Caspall noted that her answers were very short; she did not offer information; and she was difficult to engage in conversation. (*Id.* at 281, 284) Dr. Caspall reported that Ms. Dobbs's affect was restricted and blunted without marked signs of changes in mood; her speech was spontaneous, fluent, and goal-directed; her thought process were entirely logical, relevant and goal-directed; and no formal delusional material was elicited. (*Id.* at 15, 281-82) Ms. Dobbs reported having experienced hallucinations in the past, but Dr. Caspall detected no perceptual abnormalities during her examination. (*Id.* at 282)

Dr. Caspall evaluated Ms. Dobbs's cognitive ability and found her to have average-to-low-average intellectual functioning. She was able to recall items with a five minute delay; to do a calculation; and to perform serial threes without error. (*Id.* at 282) Dr. Caspall found that Ms. Dobbs's concentration was not greatly impaired; she had no difficulty with persistence; and, while she was slow to respond on tasks, she did not display "remarkable psychomotor slowing." (*Id.* at 284-85) Dr. Caspall diagnosed Ms. Dobbs with a psychotic disorder (not otherwise specified). (*Id.* at 284)

When assessing Ms. Dobbs's mental impairment, the ALJ considered the four broad functional areas set out in the regulations for evaluating mental disorders. He found that she had mild limitation in activities of daily living. He noted that she had reported being able to take care of her three children, prepare meals daily, do laundry,

wash dishes, sweep, and mop.  Further, she reported being able to shop in stores, pay bills, count change, and use a checkbook.  (*Id*. at 32, 221-228)  She also testified she was able to drive.  (*Id*. at 33)  She testified that she preferred to have someone with her when going to the grocery store, "just to feel more secure."  (*Id*. 33)

The ALJ assessed that Ms. Dobbs had mild limitation in social functioning.  (*Id*. at 16)  While Dr. Caspall found that Ms. Dobbs was limited in her ability to engage in socially appropriate communication, other evidence in the record indicates she had only mild limitation.  For example, she attended church twice per week, spent time with others on a daily basis, stated she had no problem getting along with others, and had never lost a job due to problems getting along with others.  (*Id*. at 225-27)  The evidence in the record supports the ALJ's finding of only mild limitation in social functioning.

The ALJ found that Ms. Dobbs had only mild limitation in concentration, persistence or pace.  (*Id*. at 17)  This finding is supported by Dr. Caspall's report that Ms. Dobbs had average-to-low-average intellectual functioning, as well as her performance on cognitive function testing administered during the examination.  Additionally, as noted, Ms. Dobbs reported being able to drive, prepare meals, shop in stores, use a check-book, follow short, spoken instructions and all written instructions.  (*Id*. at 221-28)  There is ample evidence to support the ALJ's finding that Ms. Dobbs had only mild limitation in concentration, persistence, or pace.

Finally, Ms. Dobbs claims episodes of decompensation.  While medical records indicate that she was hospitalized in 2011, there is no evidence in the record indicating she suffered even one episode of decompensation during the relevant time period.  (*Id*. at 297-98)

The record in this case does not indicate a severe mental impairment.  See *Buckner v. Astrue*, 646 F.3d 549, 556–557 (8th Cir. 2011) (substantial evidence supported ALJ's finding that the claimant lacked severe mental impairments; the psychological examiner concluded that claimant's depression and anxiety did not impair his activities of daily living, mildly limited social functioning, mildly limited concentration, persistence, and pace, and resulted in no episodes of decompensation; claimant twice complained to an advanced practice nurse that his medication wasn't helping with depression, but he had several normal psychological evaluations during same time period); see also *Moore v. Colvin*, No. 4:13-CV-453-JM, 2014 WL 5365557, at *3 (E.D. Ark. Oct. 21, 2014) (finding substantial evidence supported the ALJ's step-two decision that claimant's mental impairment and obesity were not severe).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Dobbs's application for supplemental security income.  The ALJ made no legal error.  For these reasons, Ms. Dobbs's request for relief (#2) is DENIED, and the decision denying the application for benefits, is AFFIRMED.

DATED this 11th day of April, 2017.

                                                                         _____
                                                                         UNITED STATES MAGISTRATE JUDGE